**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>University of Phoenix, Inc., an Arizona corporation, and Apollo Group, Inc., an Arizona corporation,<br><br>　　　　Defendants. | No. CV-06-2303-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court are four motions to intervene, (Dkt. #43, 44, 46, 60), and two motions to strike claims. (Dkt. #81, 85). Counsel for the interveners has withdrawn all non-religious claims for intervention, (Dkt. #105), and so the Court's inquiry is limited to the religious discrimination-based claims for intervention and the motions to strike. After considering the parties' briefs and the applicable case law, the Court issues the following omnibus order.

## I. Background

The First Amended Complaint was filed in this case on 4/26/2007. (Dkt. #23). The Equal Employment Opportunity Commission ("EEOC") asserted religious discrimination claims against the University of Phoenix and its corporate parent, Apollo Group (collectively "the University"), on behalf of four charging parties and a class of individuals who were

adversely affected by the University's alleged policies. Several members of the proposed class have moved to intervene, which the University opposes.

In addition, the University has moved to strike the claims of all of the previously-unnamed class members on the grounds that (1) the claims were not administratively exhausted, and (2) the identification of class members through a disclosure statement is improper. The University has also moved to strike the claims of two individuals who did exhaust their claims, but who failed to bring suit within 90 days afterward as required for them to challenge the University on an individual basis. (Dkt. #85).

## II. Analysis

### A. Intervention

Eight individuals have sought to intervene in the EEOC's action: Darry Thornton, Falonia Edenburgs, Francine Muscianisi, Alyssa Polk, Jennifer Hallman, Morseller Ector, Mark Ector, and Shelly Chambers Thompson. Counsel for the putative interveners has argued that they are entitled to intervene as a matter of right, and that these individuals do not seek permissive intervention. (Dkt. #43 p. 8-9; 44 p.8).

Federal Rule of Civil Procedure 24(a) allows a party, upon timely application, a right to intervene in an action "(1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Title VII provides aggrieved parties an unconditional right to intervene in an EEOC enforcement action. 42 U.S.C. § 2000e-5(f)(1) (2007). Therefore, each aggrieved party has a right to intervene in this enforcement action if the Court considers their applications timely.

#### 1. Thornton

##### a. Right to Intervene

Darry Thornton is one of the charging parties in this mater. (Dkt. #43). The charge he filed with the EEOC led to the current enforcement action. As a charging party, Title VII gives him an unconditional right to intervene. Id.; EEOC v. GMRI, Inc., 221 F.R.D. 562, 563 (D. Kan. 2004).

### b. Timeliness

The Court acknowledges that timeliness is determined by considering the totality of the circumstances. NAACP v. New York, 413 U.S. 345, 365-66 (1973). The University points to various factors that should inform the Court's assessment of timeliness, including (1) the stage of the current proceedings, (2) prejudice that the resultant delay might cause, and (3) the reason for the delay. (Dkt. #48).

In light of the totality of the circumstances, the Court finds the motion to intervene timely. Discovery in the case has not yet closed, and allowing Thornton to intervene is unlikely to require it to be extended. Because his claims gave rise to the enforcement action, much of the discovery related to his claims has likely already occurred, or can be completed before the discovery deadline in the case. Allowing him to intervene is unlikely to prejudice the parties.

### 2. Muscianisi and Chambers Thompson

### a. Right to Intervene

Muscianisi and Chambers Thompson also brought claims of religious discrimination to the EEOC. The EEOC did not make any determination as to the merit of either claim. For Muscianisi's claim, it determined that it was unlikely to complete its administrative processing within 180 days, and so terminated its investigation. (Dkt. #54, Exhibit 1). For Chambers Thompson's claim, the EEOC terminated the processing of the charge after more than 180 days, issuing Chambers Thompson a Notice of Right to Sue. (Dkt. #125). The Court finds that Muscianisi and Chambers Thompson consequently are aggrieved persons who have a right to intervene. GMRI, 221 F.R.D. at 563 n.4 ("'an aggrieved person is defined as a person who has filed a charge with the EEOC'") (quoting EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 273 F. Supp. 2d 260, 263 (E.D.N.Y. 2003)).

### b. Timeliness

In light of the totality of the circumstances, the Court finds that the motions to intervene by Muscianisi and Chambers Thompson are also timely. Discovery has not yet closed, and allowing them to intervene should cause little or no delay to the discovery deadlines. Counsel for the interveners has informed the Court that Chambers Thompson's deposition is currently scheduled for May, 2008. Particularly in light of the Court's disposition of the other motions to intervene in the case, the parties are unlikely to be prejudiced.

### 3. Hallman

#### a. Right to Intervene

Hallman brought an EEOC claim of discrimination on the basis of her religion and national origin in March, 2007. The EEOC closed its file in September of 2007, determining that, based on its investigation, it was unable to conclude that the information established a violation of the statutes. (Dkt. #54 Exhibit 3).

The Court does not find that Hallman is an aggrieved person within the meaning of the statute, particularly in light of the fact that this class action litigation had commenced at least five months prior to processing of Hallman's charge. If the EEOC could not determine that Hallman was a victim of discrimination, the Court cannot conclude that she is an aggrieved person such that she should be permitted to intervene.

The second basis for intervention as of right is also unavailing. Fed. R. Civ. P. 24(a)(2). The Court concludes that Hallman's interest is "adequately represented by existing parties," and that she is therefore not "so situated that the disposition of the action may as a practical matter impair or impede [her] ability to protect that interest." Id. Accordingly, Hallman's motion to intervene is denied.

### 4. Edenburgs, Polk, Morseller Ector, and Mark Ector

#### a. Right to Intervene

Because none of these individuals brought religious discrimination claims with the EEOC, the Court cannot conclude that they are aggrieved persons within the meaning of the

1 statute. Similarly, their interest is adequately represented by the charging parties and the
2 class, and so the Court will deny their motions to intervene. Id.

3 B. Motion to Strike Claims

4     The University has moved to strike the claims of various class members disclosed to
5 it through disclosure statements produced in the litigation, or alternatively, for the Court to
6 grant declaratory judgment in its favor. (Dkt. #81, 85).

7         1. Failure to Exhaust and Failure to Satisfy Pleading Requirements

8             a. Failure to Exhaust Administrative Remedies

9     The EEOC has asserted claims on behalf of the four charging parties, as well as a class
10 of individuals — many of whom have never filed a discrimination complaint with the EEOC.
11 The University asserts that the claims of many of these class members should be stricken
12 because they were not properly exhausted through the administrative process provided for
13 under Title VII.

14     The University admits that the EEOC has been permitted in the past to bring
15 unexhausted claims on behalf of a class, but asserts that the "practice is no longer permissible
16 in light of the holding by the United States Supreme Court in Ledbetter v. Goodyear Tire and
17 Rubber Co., 127 S. Ct. 2162, 167 L. Ed. 2d 982 (2007)." (Dkt. #81).

18     In Ledbetter, the Plaintiff attempted to sue her employer for gender discrimination on
19 the basis that she received poor evaluations because she was female. Id. at 2166. Because
20 pay decisions were made on the basis of her discriminatory evaluations, she was denied pay
21 raises. Id. These pay decisions continued to affect the amount of her pay throughout her
22 employment, and toward the end of her employ, she was earning significantly less than her
23 male colleagues. Id. The disparate pay decisions occurred outside the statutory limitations
24 period, but the disparate pay continued to be received within the limitations period. Id. The
25 defendants argued that she could not challenge the discrimination in court because she had
26 failed to bring an EEOC charge with respect to the *actual acts of discrimination* — the
27 discriminatory evaluations and pay decisions — within the limitations period. Id.

28

1 The Court, citing the language of the statute, held that "*[a]n individual* wishing to challenge an employment practice under this provision must first file a charge with the EEOC . . . Such a charge must be filed within a specified period . . . after the alleged unlawful employment practice occurred . . . and if *the employee* does not submit a timely EEOC charge, *the employee* may not challenge that practice in court." Id. at 2166-67 (emphasis added).

The University asserts that the language and holding in Ledbetter overrules the previous cases that have permitted the EEOC to bring class actions that include unexhausted claims. The Court finds that it does not.

At a minimum, Ledbetter is not directly on point. It involves an individual with unexhausted claims, and does not address the ability of the EEOC to bring unexhausted claims on behalf of a class.

In addition, the Ledbetter Court bases its holding on the language of the statute itself, and quotes directly from it. Id. It does not provide any reasoning that would support a reading that it intended to overrule the cases that had previously allowed the EEOC to assert unexhausted claims on behalf of a class. It fails to discuss those cases whatsoever, including cases that it had cited to favorably just a few years prior. See EEOC v. Waffle House, 122 S. Ct. 754, 761 (2002) (recognizing the distinction between an individual employee's private cause of action and the EEOC's enforcement role in securing relief for a group of individuals, citing to Occidental Life Ins. Co. of Cal. v. EEOC, 432 U.S. 355 (1977), and General Telephone Co. of Northwest v. EEOC, 446 U.S. 318 (1980)).

Furthermore, the language of the statute — on which the Ledbetter decision is based — does not address the ability of the EEOC to assert claims on behalf of a class, whether exhausted or not. The statute specifically discusses the inability of an "*individual*" to bring claims if "*the employee* does not submit a timely EEOC charge." 42 U.S.C. § 2000e-5(f)(1).

1 There are important policy reasons to make a distinction between an individual and the
2 EEOC when considering the ability to bring unexhausted claims in court.[1]

3 Finally, a requirement that all claims be exhausted completely defeats the purpose of
4 the EEOC bringing a class action. If the claims were exhausted, the EEOC would have either
5 determined that they had merit, and pursued them individually, or not have made such a
6 determination (making class disposition of the claims highly unlikely). Logic dictates that
7 the Supreme Court would have given a little more discussion to a decision that would have
8 the practical effect of nullifying the EEOC's ability to bring class actions.

9 The Court finds that the decision in Ledbetter did not address, and therefore could not
10 affect, the EEOC's ability to bring unexhausted claims on behalf of a class. Because the
11 University relies on Ledbetter to support its argument that the EEOC is no longer permitted
12 to bring unexhausted claims on behalf of a class, the Court holds that these claims should not
13 be stricken.

### b. Failure to Satisfy Pleading Requirements

15 The University argues that even if the EEOC is permitted to pursue claims on behalf
16 of the newly disclosed class members, the mere inclusion of their names in a supplemental
17 disclosure statement does not satisfy the requirements of Fed. R. Civ. P. 8. (Dkt. #81). The
18 University cites to the recently decided Supreme Court case of Bell Atlantic v. Twombly,
19 127 S. Ct. 1955 (2007), for support for its position.

20 In Twombly, the Court announced that the standard needed to meet Rule 8
21 requirements was one of "plausibility," rather than merely "possibility." Id. at 1974. The

---

[1] The University, in arguing that the class members' claims must be exhausted, repeatedly highlights the importance of the conciliation process in employment discrimination claims. The University asserts that informal methods of conference, conciliation and persuasion are preferable to resolution in the federal courts. The Court notes that the charging parties' exhausted claims, presumably arising out of similar circumstances to the unexhausted claims, were subject to this mandatory conciliation process without success. Furthermore, conciliation is not foreclosed on behalf of the class members' claims merely because litigation has commenced; the parties are free, and in fact encouraged, to resolve these claims cooperatively.

1 Court required the plaintiff to assert enough facts in the complaint to raise a reasonable
2 expectation that discovery would reveal evidence to support the plaintiff's claim. <u>Id.</u> at 1966.
3 The University argues that here, the claims of the class members whose identities were
4 revealed through disclosure statements are "woefully deficient" as measured against the
5 plausibility standard announced in <u>Twombly</u>. (Dkt. #81).  The University asserts that the
6 "factual predicates with respect to these individuals' claims are not simply vague, they are
7 entirely absent." (<u>Id.</u>)

8       The Court disagrees that the inclusion of class members' names in a disclosure
9 statement is deficient under the standard announced in <u>Twombly</u>.  Without determining
10 whether the <u>Twombly</u> pleading standard in fact applies outside of the context of antitrust
11 cases, the Court finds that the First Amended Complaint in this case, in any event, satisfies
12 the "plausibility" requirement. <u>Twombly</u>, 127 S. Ct. at 1974.

13       The First Amended Complaint in this case sets forth the factual predicates for the
14 Plaintiffs' claims, and indicates that the claims are being asserted on behalf of a class whose
15 membership had not been entirely determined.  (Dkt. #23).  The later fleshing-out of the
16 claims through disclosure of class members as they became known to counsel is sufficient
17 to bring those claims into the realm of "plausibility." <u>Twombly</u>, 127 S. Ct. at 1974.

18       Accordingly, the Court holds that the claims of the class members should not be
19 stricken on the basis that they do not comply with the pleading requirements of Rule 8 of the
20 Federal Rules of Civil Procedure.

21       <u>2. Failure to Bring Suit Within 90 Days of Notice of Right to Sue</u>

22       The University has also moved to strike the claims of two class members — Wesley
23 Jueckstock and Phyllis Stewart — who filed charges of discrimination with the EEOC but
24 did not timely file a lawsuit on their own behalf.  (Dkt. #85).  The EEOC was unable to
25 conclude that the information in the charges established a violation of Title VII, and issued
26 notices that opened up a 90-day period in which they could have pursued a private Title VII
27 enforcement action.  Because neither Jueckstock nor Stewart exercised this right, the
28

1 University argues that their claims are forever time-barred and cannot now be brought by the
2 EEOC. (Id.)

3 Further, Jueckstock entered into an unrelated settlement agreement with the
4 University, in which he released all potential claims against the University. The EEOC, the
5 University argues, is therefore precluded from recovering "any additional relief on his
6 behalf." (Id.)

7 There is significant authority to suggest that the EEOC is not merely a proxy for
8 victims of discrimination; it can bring an action in its own name to terminate unlawful
9 employment practices and secure appropriate relief. See General Tel. Co. of the Northwest,
10 Inc. v. EEOC, 100 S. Ct. 1698, 1700, 1703 (1980). The EEOC's claims are not merely
11 derivative of the claims of the individuals it represents, and it "does not stand in the
12 employee's shoes." EEOC. v. Waffle House, 122 S. Ct. 754, 766 (2002). In other words,
13 the EEOC is not barred from seeking relief on behalf of Jueckstock and Stewart by virtue of
14 the fact that they are now individually barred from initiating a private enforcement action.

15 The Ninth Circuit has specifically held the EEOC is not prohibited from suing on
16 behalf of a party who chooses not to sue in the allotted ninety days. EEOC v. Occidental
17 Life Ins. Co. of Cal., 535 F.2d 533, 536 (9th Cir. 1976) ("should the person concerned choose
18 not to sue during the allotted 90 days, the EEOC is not prohibited from suing thereafter. The
19 statute in no way limits the time within which it must sue, so long as the charging party has
20 not done so."). The fact that Jueckstock and Stewart did not bring claims within the ninety
21 day period does not now prevent the EEOC from raising claims on their behalf. The EEOC
22 is charged with vindication of the public interest, and is not merely concerned with the
23 enforcement of private rights. Id. at 542.

24 The University also argues that the EEOC's previous inability to conclude that a
25 violation had occurred now prevents them from asserting these claims. The Court finds that
26 it does not. The EEOC points out that it no longer conducts full investigations of each
27 charge, and consequently, the agency no longer issues "no cause" findings. (Dkt. #89). The
28 notices of dismissal "unequivocally reflect that the EEOC made no determination that Mr.

Jueckstock's or Ms. Stewart's charges were unfounded." (Id.)  In any event, "the courts retain remedial powers under Title VII despite a finding by the EEOC of no reasonable cause to believe that Title VII has been violated." General Tel. Co. of the Northwest , Inc. v. EEOC, 100 S.Ct. 1698, 1707 (1980).

Finally, the University seeks to strike Jueckstock's claim based upon his earlier settlement and release of all potential claims against the University. The Court finds that this is not a basis to strike his claim.

The Court reiterates that the EEOC, as vindicator of the public interest, is not merely a representative of the individual claimants. EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1542 (9th Cir. 1987). Its right to bring suit is independent of the employee's private action rights. Id.

Instructive is EEOC v. Waffle House, 122 S. Ct. 754 (2002), holding that an employee's agreement to arbitrate, to which the EEOC was not a party, did not preclude the EEOC from seeking victim-specific judicial relief for the employee. The Court cautioned, however, that it was "an open question whether settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC [could] seek." Id. at 766. Similarly, "[t]he Fifth and Sixth Circuits have suggested that a prior settlement may limit the scope of relief that the EEOC may seek on behalf of the settling employee." Goodyear, 813 F.2d at 1543 (citing cases). And it also "goes without saying that the courts can and should preclude double recovery by an individual." General Tel., 100 S. Ct. at 1708.

The Court does not view these concerns relating to *remedies* as a proper basis for striking the claim altogether. The motion to strike Jueckstock's claim on this basis is therefore denied.

### III. Conclusion

The Court finds that Darry Thornton, a charging party in the case, Francine Muscianisi, and Shelly Chambers Thompson should be permitted to intervene as of right, and the other motions for intervention should be denied. The Court also finds that the University has not presented sufficient evidence that the claims of the class members should be stricken.

- 10 -

Accordingly,

**IT IS ORDERED** granting the motion to intervene by Shelly Chambers Thompson (Dkt. #60).

**IT IS FURTHER ORDERED** granting in part and denying in part the motions to intervene by Darry Thornton and Falonia Edenburgs, (Dkt. # 43), and Francine Muscianisi and Alyssa Polk (Dkt. #44).

**IT IS FURTHER ORDERED** denying the motion to intervene by Morseller Ector, Mark Ector, and Jennifer Hallman, (Dkt. 46).

**IT IS FURTHER ORDERED** denying the motions to strike claims or alternatively for declaratory judgment. (Dkt. #81, 85).

DATED this 1st day of May, 2008.

_____
Mary H. Murguia
United States District Judge